IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ESTEBAN TIZNADO-REYNA,<br><br>　　　　Defendant. | CR 06-1121-TUC-FRZ (BPV)<br><br>**REPORT AND RECOMMENDATION** |

The District Court referred this case to the Magistrate-Judge for hearing on pretrial motions. (It should be noted the case was originally assigned to Magistrate Velasco as the "paired" magistrate; however, because Magistrate Velasco was not available to hear the motions, Magistrate Edmonds presided over the hearing in question.) On June 28, 2007, hearing was held on the defendant's Motion to Dismiss (Defendant is a U.S. Citizen Through Father's Citizenship). Upon consideration of the evidence presented at the hearing and the arguments of respective counsel, the Magistrate recommends the District Court deny the defendant's Motion to Dismiss.

**INDICTMENT:**

The defendant is charged with illegal re-entry in violation of Title 8, U.S.C., § 1326, enhanced by Title 8, U.S.C. §1326(b)(2).

## MOTION TO DISMISS:

Defense counsel argues defendant is a derivative U.S. citizen because his father was a U.S. citizen. Therefore, because a element of the offense of illegal re-entry is the "alien" status of the defendant the indictment in this case should be dismissed.

### *Julia Reina Tiznado*

Julia Tiznado is the 72 year old mother of the defendant. She testified the defendant's father is Jesus Diego Tiznado who died in 2000. She met Jesus Diego Tiznado when she was 14 years old. After the defendant's birth she married Jesus Diego Tiznado in 1979 in Sasabe in Sonora, Mexico. Jesus Diego Tiznado had "always" told her he was born in Topawa, Arizona, and had lived and worked in the U.S. for much of his life. She identified the following exhibits:

--Exhibit A: she stated is the "border crossing card" which belonged to Jesus Diego Tiznado. The card was issued by U.S. Immigration and Naturalization Service on February 22, 1980, and is titled "U.S. Citizen Identification Card."

--Exhibit B: she stated is the birth certificate for Jesus Diego Tiznado. It is a "Delayed Certificate of Birth" issued by the State of Arizona and indicates the birth was registered on October 26, 1979. The certificate indicates Jesus Diego Tiznado was born November 22, 1922, in Topawa, Arizona.

--Exhibit D: she stated is the death certificate for Jesus Diego Tiznado. It was issued by the State of Arizona and indicates he died October 27, 2000, in Tucson.

--Exhibit E: she stated is the Certificate of Baptism for Jesus Diego Tesnado. The document was issued October 3, 1974, and indicates Tesnado was born in Topawa, Arizona on November 12, 1922, and baptized in Topawa on October 10, 1924. The certificate was issued by the San Solano Missions in Topawa.

--Exhibit F: she stated is the Certificate of Baptism for Jesus Diego Tiznado. The certificate was issued on April 8, 1976, and indicates Tiznado was born in Topawa, Arizona,

1  on November 12, 1022, and baptized in Topawa on October 10, 1924. The certificate
2  appears to have been issued by the Papago Indian Reservation.
3      It should be noted that Exhibit A was admitted for the sole purpose of establishing that at
4  some point Jesus Diego Tiznado "ha[d] claimed under oath to be a citizen of the United
5  States through BIRTH." (*See* the wording on the card.)
6      The witness testified she and Jesus Diego Tiznado were married in Mexico in 1979. The
7  defense attempted to introduce into evidence a document which was either a copy of the
8  marriage license or a copy of the defendant's birth certificate; the witness stated she was
9  unable to say which it was because of her poor eyesight. The document was not admitted
10 into evidence because it bore no authentication.

11 ***Jose Ruiz Caballero***

12     Caballero testified he knew Jesus Diego Tiznado for 40-45 years. He knew Jesus Diego
13 Tiznado to be a childhood friend of his father's. Caballero had worked with Jesus Diego
14 Tiznado in the U.S. for a while. Jesus Diego Tiznado had always told him he was born in
15 Topawa, Arizona. Caballero identified Exhibit H as an affidavit he had written and signed
16 in 1999; the last line of the affidavit states Jesus Diego Tiznado was born in the United
17 States.
18     On cross-examination Caballero admitted he was not present when Jesus Diego Tiznado
19 was born; in fact, Tiznado was "much older" that he.

20 ***Horacio Mazon Fuentes***

21     Fuentes testified he knew the defendant's father for 25-30 years until his death. He and
22 the defendant's father "kind of lived in the same neighborhood. Tiznado had never told him
23 where he was born, but never said he was not born in the U.S.

24 ***Arcadia Espinoza***

25     Espinoza is the daughter of Jesus Diego Tiznado and the defendant's older sister (by four
26 years). Her father always told her he was born in Topawa, Arizona.
27
28

1  On cross-examination Espinoza testified that she and the defendant were born in Sonora,
2  Mexico. She did not move to the U.S. until age nine.

3  ***Sarah Tiznado***

4  Sarah is the daughter of Jesus Diego Tiznado and the defendant's older sister (by 13
5  years). Her father always told her he was born in Topawa, Arizona, and was an American
6  citizen.

7  On cross-examination, Sarah testified she was born in Caborca, Mexico, and lived in
8  Mexico until 1983 when she moved to the U.S. Her father lived in Mexico with the family
9  from the time of her birth, i.e., 1961, until she married at age 15.

10  On re-direct she stated her father had told her he had worked in the U.S. before her birth,
11  but she did not know where he worked after her birth

12  ***Maria Del Carmen Alcaraz Lopez***

13  She testified she knew Jesus Diego Tiznado since she was 10 years old. She lived in
14  Caborca, Mexico, which is about two hours from Topawa, Arizona. She would see him
15  occasionally in Mexico and he had told her he was born in Topawa, Arizona.

16  ***Stephen Feagley***

17  Feagley is a U.S. Border Patrol agent currently detailed to the Tucson Sector Prosecutions
18  Unit. He testified he is the custodian of alien registration records for cases in which he
19  assists federal prosecutors, and his job is to assure the records are complete and accurate. An
20  A-file is an administrative file kept maintained by the service that contains paperwork
21  relating to aliens. This paperwork includes photos, fingerprints, any motions, denials,
22  judgments, orders by immigration judges, etc. Feagley had with him the A-file for Esteban
23  Tiznado Reyna which contained a photo of the defendant. Feagley identified Exhibit 2 as
24  a copy of the decision regarding an Application for Certificate of Citizenship made by
25  Esteban Reina Tiznado. The decision is dated May 3, 1989, and was issued by the
26  Immigration and Naturalization Service of the U.S. Department of Justice. Exhibit 2
27  indicates the application, which was based on a claim of derivative citizenship, was denied
28

- 4 -

1  and an attachment states the reasons therefore. Feagley also testified the A-file also
2  contained a investigative memorandum prepared by a Border Patrol agent dated May 23,
3  2006, which is the date of illegal re-entry set forth in the current indictment against the
4  defendant. The investigative memorandum indicates that when the defendant was questioned
5  about his citizenship he "stated he was citizen and national of Mexico..."

6  On cross-examination Feagley admitted a person can be a citizen of the U.S. and another
7  country. He also stated the investigative memorandum does not indicate the defendant
8  denied being a U.S. citizen. With regard to the Exhibit 2, the denial of the defendant's
9  application for a certificate of citizenship, Feagley testified there was no indication the
10 defendant had a lawyer during that process and that applicants are not entitled to have free
11 counsel appointed. The denial is based on the fact that the applicant "failed to establish that
12 your father is a citizen of the United States...." Feagley also agreed the applicant had the
13 burden of establishing his derivative citizenship in the INS proceeding, and that the finding
14 did not establish the defendant was not, in fact, a U.S. citizen.

**DISCUSSION:**

The provisions dealing with establishing the U.S. citizenship of children born out of wedlock are to be found in 8 U.S.C. §1409. Because this court could find no case law establishing the precedential value, if any, to be accorded the INS denial decision this discussion will analyze the issue by discussing first the INS findings and then only that evidence presented to this court.

It should be noted that Exhibit 2 advised the defendant of his right to appeal the denial decision and the appeal must have been filed within 15 days. There is no evidence the defendant filed an appeal.

The defendant claims to have been born in 1974 and all parties agree that one fact the defendant must establish in his claim of derivative citizenship is that his paternity was

established by legitimation before he attained the age of 21 years. Of course, he must also establish a blood relationship between himself and Jesus Diego Tiznado. Exhibit 2 indicates the INS District Director concluded the defendant's paternity was legitimated because a marriage license was submitted showing his parents were married in Sasabe, Sonora, Mexico, on March 31, 1979. The INS decision also noted a birth certificate for the defendant had been submitted, which presumably established the necessary blood relationship. Before this court, however, no marriage license for the defendant's parents was admitted into evidence and no birth certificate for the defendant was even proffered. Although Julia Reina Tiznado testified she was the defendant's mother, that Jesus Diego Tiznado was his father, and that they married in Mexico after the defendant's birth, she did not testify as to the defendant's birth date or as to the date of the marriage.

To establish his claim to derivative citizenship the defendant must also establish his father was a U.S. citizen at the time of the defendant's birth. Exhibit 2 indicates the defendant presented several documents, including the delayed birth certificate and baptismal certificate to establish the U.S. citizenship of Jesus Diego Tiznado. However, the INS District Director noted that the school record submitted to obtain the delayed birth certificate did not show his birth place, but did show his nationality as Mexican. Furthermore, the District Director wrote that when the INS obtained the Mexican birth certificates for the defendant and his siblings they all indicated the father was a Mexican citizen born in Mexico. The Director also noted that the birth certificates the defendant had submitted for himself and his siblings "were all visibly altered." In this court the defense presented a delayed Arizona birth certificate and baptismal certificates for Jesus Diego Tiznado indicating he was born in Topawa, Arizona. No evidence was presented undermining the validity of those documents.

To establish his claim to derivative citizenship the defendant must further prove that prior to the defendant's birth his father had been physically present in the U.S., or its outlying possessions, for a period totaling 10 years, at least five of which were after attaining the age of 14 years. Exhibit 2 does not contain any discussion of what evidence–or its sufficiency--

was presented to establish the residency requirement as to Jesus Diego Tiznado. At the hearing before this court no such evidence was presented other than a general reference to the fact Jesus Diego Tiznado had lived and worked in this country for some period of time.

**RECOMMENDATION:**

In view of the foregoing the magistrate recommends that the District Court, after its de novo review of the record, **DENY** the defendant's Motion to Dismiss. This Report and Recommendation is being faxed to all counsel on this date. Counsel would normally have 10 days to serve and file objections to this Report and Recommendation. However, because trial in matter is set for Tuesday, September 18, 2007, both counsel should file and serve any objections by September 17tha and be prepared to argue them the morning of trial. **Any objections should be directed to the District Court by omitting the magistrate's initials: i.e., CR-06-1121-FRZ.**

DATED this 10th day of September, 2007.

*[signature]*
Glenda E. Edmonds
United States Magistrate Judge